## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **J&J SPORTS PRODUCTIONS, INC.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 17-1942** |
| | : | |
| **DANIEL RAMSEY,** *et al* | : | |
| | : | |

**KEARNEY, J.**                                                                                 **September 27, 2017**

### MEMORANDUM

Congress prohibits the piracy of encrypted pay-per-view telecasts. When a company owning a private banquet hall charges admission to enjoy a meal and a pay-per-view broadcast of an anticipated boxing match such as "The Fight of the Century" but does not pay for the right to telecast the boxing match, federal law requires we compensate the unpaid owner of the distribution rights with actual or statutory damages, enhanced damages should we find willful conduct and reasonable attorney's fees and costs. When the banquet hall fails to answer the complaint, we accept the distributor's facts but must examine the damages claim. Following a hearing where the defendants did not appear, we award the statutory damages equal to the amount required to be paid by a banquet hall, plus 33% in enhanced damages and reasonable attorney's fees and costs. We enter judgment today against the limited liability company owner of the banquet hall.

### I.     Facts

J&J Sports Productions, Inc. owned proprietary rights to distribute "The Fight of the Century", Floyd Mayweather Jr. v. Manny Pacquiao telecast nationwide on Saturday, May 2,

2015. J&J, an international distributor of sports entertainment programming, enters into licensing agreement with commercial establishments to permit the public exhibition of the fight by television. J&J encrypts its interstate transmission of the fight to ensure it is available only to J&J's customers who pay it a certain fee based on the capacity of the hall being used for commercial purposes.

We reviewed a social media notice of the May 2, 2015 "Fight of the Century" being shown at the Treasures Banquet Hall with a requested $20 fee per person.[1] Treasures 5549, LLC invited guests with music and food in exchange for $20.00.[2] A person self-described as "JoeBread" sent out an advertisement on Facebook: "calling all Taurus!!! Book ya free bday party for the Mayweather v. Pacquiao fight party May 2 @ Treasures Banquet Hall, ***Free chicken and fish platters all night long***Free martini's from 7-9... Fight shown on 5 projector screens".[3] As shown by unrefuted affidavits, Treasures Banquet Hall, owned by Treasures 5549, LLC, charged $20 a guest to enter its facility on May 2, 2015. Treasures 5549, LLC is a limited liability company allegedly owned by Daniel Ramsey. Mr. Ramsey pursued an amusement license for Treasures 5549, LLC on June 5, 2013 which expired on December 31, 2015. An e-mail DANRAMSEY49@HOTMAIL.COM is identified on the license application for Treasures Banquet.[4] Mr. Ramsey filed the appropriate registration papers for the limited liability company. We admitted two newspaper articles at our hearing indicating Mr. Ramsey has some role with the Treasures Banquet Hall.

The undisputed evidence adduced at our hearing confirmed the capacity of this facility in excess of 200 persons.[5] Under the "rate card", a commercial entity seeking to televise this fight in a room with the capacity of between 200 and 300 people based on its fire code occupancy is required to pay $9,000. [6] J&J's private investigators paid a cover charge of $20 to enter the

facility on May 2, 2015 which provided free chicken and fish in the back of the banquet hall with one television and three projection screens showing these boxing matches. One investigator swore the capacity of the banquet hall is approximately 300 people and he estimated between 200 and 253 persons.[7] A second investigator confirmed a cover charge of $20 and ordering cocktails. He observed five projection screens on the walls.

It is undisputed no one, including Treasures 5549, LLC, paid J&J for the right to show the May 2, 2015 pay-per-view telecast. J&J concedes it lacks evidence of Treasures Banquet Hall or Mr. Ramsey ever pirating pay-per-view telecasts other than showing this May 2, 2015 telecast.

J&J sued Treasures 5549, LLC and Daniel Ramsey. Neither defendant answered the Complaint. The Clerk of Court entered default and we held a hearing on the damages to be awarded in a judgment. While a default admits the fact of liability, J&J must demonstrate its damages against Treasures 5549, LLC and Daniel Ramsey.

## II.     Analysis

J&J timely moved for damages. We scheduled a hearing on damages and ordered J&J to personally serve each Defendant. It did so. Neither Defendant appeared. J&J presented affidavits and oral argument at our long-scheduled hearing. J&J confirmed it sought statutory damages in lieu of actual damages, enhanced damages due to the willfulness of the piracy and to deter further piracy and attorney's fees and costs. We ordered J&J to file a post-hearing affidavit demonstrating the reasonableness of its attorney's fees and out-of-pocket costs.

### A.  We award $9,000 in statutory damages.

The aggrieved party may elect to receive statutory damages in lieu of actual damages.[8] Our statutory damages award must be at least $1,000 but no more than $10,000 per violation.[9]

"The statutory damages provision authorizes courts to use their discretion to fashion factors to estimate, rather than compute actual damages."[10] Our statutory damages estimate includes two categories: (1) the amount the violator would have paid had he or she paid for a license; and (2) the violator's profits to the extent they are attributable to the violation.[11] In estimating profits, we consider:

> (1) the size of the establishment;
>
> (2) the number of patrons at the establishment, taken, to the extent possible, as the number of patrons present because of the interception (to which evidence of advertising to attract customers may be relevant);
>
> (3) the number, size, and position of screens displaying the broadcast (a factor to be considered in conjunction with (1) and (2) as an indication of who might be there specifically to watch);
>
> (4) any cover charge levied because of the interception;
>
> (5) what additional money patrons spent because of the interception (i.e., the amounts spent by those who otherwise would not have come, plus any other premiums or greater spending by those who would have come anyway); and
>
> (6) any such other factors as may appear relevant in the case before the court.[12]

The evidence is undisputed. J&J charges $9,000 for licensing this telecast at a facility with a capacity of 200 to 300 persons. We award this contract fee as the statutory damages.

## B. We award 33% in enhanced damages.

We may award enhanced damages of up to $100,000 for each willful violation committed "for purposes of direct or indirect commercial advantage or private financial gain."[13] Our award of enhanced damages may reflect an amount we consider appropriate to deter the prohibited

conduct.[14] Willfulness requires evidence of "intent and either knowledge of or reckless disregard for the illegality of the conduct, and not mere negligence."[15]

Our court of appeals has not defined the factors for an appropriate amount of enhanced damages. Our colleagues have adopted alternative measures to calculate an amount necessary to deter the prohibited conduct. In measuring enhanced damages, some courts may apply a multiplier of at least three to six times the award of statutory or actual damages.[16] In deciding an appropriate multiplier, we may consider factors such as whether the violator is a repeat offender. Alternatively, courts will apply a series of factors in determining enhanced damages. We will not apply a multiplier in this case due to a lack of evidence of actual damages or other interceptions of encrypted broadcasts at the Treasures Banquet Hall.[17]

Instead, in a case where we have no evidence of repeated conduct, we find the deterrence goals of enhanced damages can be evaluated through factors recently described in *Joe Hand Promotions, Inc. v. Michelina Enterprises, Inc.*[18] relying upon *Joe Hand Promotions, Inc. v. Waldron*[19]: "(1) whether the defendants has intercepted unauthorized broadcasts repeatedly and over an extended period of time; (2) whether it reaped substantial profits from the unauthorized exhibition in question; (3) whether the plaintiff suffered significant actual damages; (4) whether the defendant advertised its intent to broadcast the event; and (5) whether the defendant levied a cover charge or significant premiums on its food and drink because of the broadcast."

As in *Michelina*, J&J adduced no evidence of Treasures 5549,LLC or Mr. Ramsey being repeat offenders. We also have no evidence of profits. But we have evidence of a $20 cover charge which, in part, paid for the free fish, chicken and martinis. We have no evidence of any other activity at the banquet hall. While we have no evidence of substantial profits, we can fairly find profits from over 200 people paying a $20 cover charge net of the food costs. J&J did not

adduce evidence of advertising by the Defendants. We reviewed social media advertising by a JoeBread. We have no idea of who he is or his relationship to Defendants. We also have no evidence of J&J's actual damages.

On balance, we find willfulness from the advertising which we cannot discount simply because the social media came from an unknown "JoeBread". Treasures Banquet Hall is prominently mentioned in the advertisement. The undisputed evidence is over 200 people attended this exhibition. But the other factors do not warrant a substantial premium of the statutory damages. Our evaluation of the adduced evidence leads us to award a 33% enhanced damages premium.

### C. We award reasonable attorney's fees and costs.

J&J submitted detailed unredacted invoices of its counsel's time and out of pocket expenses incurred in pursuing Defendants. We carefully reviewed the time entries and find they are reasonable in the amount and allocation of hours among attorneys and paralegals.

The hourly rates for experienced attorneys in this District are also reasonable and consistent with our earlier findings of reasonable rates in commercial matters. The billed hourly rates of Plaintiff's national ($450) and local ($400) counsel are reasonable for attorneys of their experience in this District. We do not rely upon the Washington D.C. survey of reasonable fees from 2003-2014 attached to Plaintiff's motion. (ECF Doc. No. 30-2). Absent objection, we consider the present billing rates for attorneys in this District since 2015 known in this Court. [20]

### D.    J&J did not adduce evidence to hold Daniel Ramsey liable for the judgment.

J&J seeks also to impose liability upon Daniel Ramsey individually. Daniel Ramsey can be individually liable if he "(1) has the right and ability to supervise the violative activity, although [he] need not actually be supervising, because [he] need not know of the violative

6

activity, and (2) has a direct financial interest in the violation, i.e., financial benefits, even if not proportional or precisely calculable, that directly flows from the violative activity."[21]

Mr. Ramsey's liability is shown by more than mere conclusory allegations, as in *Michelina*. J&J adduced evidence of Mr. Ramsey registering Treasures, 5549, LLC and being on the business license. But this is it. Unlike *Chauca*, J&J adduced no evidence of Mr. Ramsey ordering the telecast, advertising the telecast or his presence in the Treasures Banquet Hall for the showing.[22] J&J admittedly cannot show Daniel Ramsey engaging in this type of conduct before or after this fight. We cannot reach so far as to find a person holding the business license made the decision to pirate this telecast or supervised the activities this evening. J&J may have adduced this evidence but elected not to. We will not impose personal liability on a business owner for this piracy unless we have some evidence of his knowledge.

## III. Conclusion

Following a hearing, we find J&J is entitled to a default and finding of liability against Defendants as well as statutory damages, $3,000 in enhanced damages and the reasonable attorney's fees and costs against Treasures 5549, LLC. We recognize the statute's purpose in stopping this piracy and agree the most effective way of doing so would include damages against the individual holding the business license. But the owner of the telecast rights must adduce evidence to allow findings of substantial enhanced damages and personal liability. It elected not to do so here. In the accompanying Judgment, we enter a damages award of $20,674.11 against Treasures 5549, LLC.

---

[1] ECF Doc. No. 17-4.

[2] *Id.*

[3] *Id.*

[4] ECF Doc. No. 17-2.

[5] ECF Doc. No. 17-4.

[6] ECF Doc. No. 17-3.

[7] ECF Doc. No. 17-4.

[8] 47 U.S.C. § 605(e) (3)(C)(i).

[9] 47 U.S.C. § 605(e) (3)(C)(i)(II).

[10] *J & J Sports Prods., Inc. v. Cruz*, No. 14-2496, 2015 WL 2376051, at *5 (E.D. Pa. May 18, 2015) (citing *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 277 (E.D. Pa. 2014)).

[11] *Id.* (quoting 47 U.S.C. § 605(e) (3)(C)(i)(I)).

[12] *Id.* (quoting *Yakubets*, 3 F. Supp. 3d at 280).

[13] 47 U.S.C. § 605(e)(3)(C)(ii).

[14] *J & J Sports Prods., Inc.*, 2015 WL 2376051, at *5.

[15] *Id.* (quoting *Yakubets*, 3 F. Supp. 3d at 282–83).

[16] *Id.* at *7.

[17] *J&J Sports Prods., Inc. v. Chauca*, No. 14-6891, 2015 WL 7568389, at *3 (E.D.Pa. Nov. 25, 2015).

[18] No. 16-1880, 2017 WL 3581674 at *4 (M.D.Pa. Aug. 18, 2017).

[19] No. 11-849, 2013 WL 1007398, at *7 (D.N.J. Mar. 13, 2013).

[20] *See DVComm, LLC v. Hotwire Communications, LLC*, No. 14-5543, ECF Doc. No. 149 (E.D.Pa. Feb. 16, 2016).

[21] *Chauca*, 2015 WL 7568380, at *5 (quoting *Joe Hand Promotions, Inc. v. Yakubets*, 3 F.Supp. 3d 261, 296 (E.D.Pa. 2014)(emphasis omitted)).

[22] *Chauca*, 2015 WL 7568380, at *5 (individual owner/manager admitted he ordered the pirated telecast, advertised the telecast and was inside the room showing the telecast the same night).